# EXHIBIT 1-11

as an instrument to effectuate their fraud and self-profit combined with the Second Group's coordinated efforts in stealing the Funds by, *inter alia*, payment of the Five Companies' non-related CCB loans, with its sights on the multi-million dollar VTB call options for BTH and Vivacom.

201. The First Group, by its actions turned the SBP into a vehicle for fraud and profited from with the Second Group to the detriment of Plaintiffs.

202. Three of the Five Companies (Tabak Market; Droslian Bulgaria; and Cibole) were part of the VTB-held call option related to the privatization of Bulgartabac Holding and Cibole was part of the VTB-held call option related to Vivacom (33%). The fraudulent satisfaction and extinguishment of their debt increased their value when the call options was exercised, at no cost to the politicians who controlled them (MRF and Peevski), and Peevski increased their value further to his benefit after the privatization of Bulgartabac.

203. Upon information and belief, the call option was intended to benefit TGI at a fixed agreed-upon price. However, failure to discharge The Five Companies' debts would put the call options at risk due to forced collection of the companies' assets held by CCB as collateral which would have, *inter alia*, negatively impacted the prices of BTH's shares and the integrity of its corporate structure. As Peevski declined to pay CCB The Five Companies CCB loans after Vassilev made demand for same, CCB had already commenced in this time period collections actions against the non performing loans.

204. The elimination of the Five Companies' debts, and the release of the shares held as CCB loan collateral, ultimately opened the door for TGI to acquire unencumbered and thereby otherwise unavailable for acquisition, two of the Peevski-controlled Bulgartabac subsidiaries (Tabak Market and Yurii Gagarin) and consolidate its control over

Bulgartabac. The press has reported that TGI and Faraj has been a source of financing for ISIS.

205. Tabak Market benefited the most from the Ayr funds when its CCB debt was extinguished in the amount of $22,051,282 (BGN 34,400,000) on December 1, 2014, through Peevski's orchestrated conduct and conspiracy with the defendants.

206. Upon information and belief, Cibole Bulgaria had no corporate activity other than being created by its parent company to serve as the vehicle to purchase and privitize Technoexportstroy, EAD, a Bulgarian registered company, and to procure the funds for this privatization so to participate in the consortium for the Russian Federation Gazprom southern pipeline project sanctioned by the EU and the United States, purchase with a CCB loan.

207. Cibole Bulgaria benefited from the Funds when its CCB debt was extinguished in the amount of $10,897,435(BGN 17,000,000) on December 1, 2014, through Peevski's orchestrated conduct and conspiracy with the defendants.

208. Droslian Belize by corporate resolution dated February 26, 2013, authorized the purchase of Baranko EOOD, a company registered in Bulgaria, as well as the taking-over of Baranko's debt with FIB in the amount of $12,748,715 (€9,748,987.79).

209. Upon information and belief, Droslian Bulgaria has no corporate activity other than being the vehicle to secure the CCB loan for its parent company to purchase Baranko.

210. Upon information and belief, The funds Droslain Belize used to purchase Baranko came from its subsidiary company Drosliann Bulgaria which obtained a CCB loan. Droslian Bulgaria benefited from the Ayr funds when its CCB debt was extinguished in the amount of $10,776,856 (BGN 16,811,896) on December 1, 2014, through Peevski's orchestrated conduct and conspiracy with the defendants.

211. Droslian's loan was collateralized with Baranko's 49% shares in Yurii Gagarin, AD.

212. Upon information and belief, Vili Vist secured a CCB loan to purchase Transstroy Burgas AD, in Burgas, Bulgaria, an already-privatized port construction company, so to participate in the consortium for the Russian Gazprom southern pipeline project sanctioned by the EU and the United States. Vili Vist's actual owner is Jordan Tsonev, a member of the Bulgarian parliament for MRF.

213. Upon information and belief, Tsonev defaulted on its CCB loan and then garnered the support of fellow member of parliament, Peevski, who organized the loan repayment. This loan was extinguished with the Funds.

214. Vili Vist benefited from the Ayr funds when its CCB debt was extinguished in the amount of $6,671,154 (BGN 10,407,000) on December 1, 2014, through Peevski's orchestrated conduct and conspiracy with the defendants.

215. Upon information and belief, Promishleno Stroitelstvo Holding secured a CCB loan to participate in the consortium for the Russian Gazprom southern pipeline project sanctioned by the EU and the United States.

216. Promishleno Stroitelstvo Holding benefited from the Ayr funds when its CCB debt was extinguished in the amount of $4,513,133 (BGN 7,040,488) on December 1, 2014, through Peevski's orchestrated conduct and conspiracy with the defendants.

217. Thus, Ayr's funds were used to start the domino effect to benefit TGI's goal to consolidate BT and its manufacturing and distribution under its umbrella through the call option. To that end, the Funds ultimately provided corporate entities to be sold to TGI debt-free which in turn opened the door for Foraj to gain access to the BT Middle East distribution market through his company Tobacco EMEA Trade Ltd. Tobacco EMEA is

part of the call option payment structure, having paid EFV $21,250,937.00 in exchange for access to the BT Middle East distribution rights resulting in contraband cigarette sales to ISIS.

218. Upon information and belief, Peevski, for such benefit to TGI, received the following benefits for which he had no income source to support:

    a. Peevski was 100% owner of NSN Investment, EEOD, which in turn owned 100% of Tabaco Investment, EOOD, which became a 5% shareholder in BTH on August 17, 2015.

    b. Seven months later on March 18, 2016, Peevski's then closely-held company, Tabaco Investment, EOOD, extracted its 5% BTH position and sold it to TGI for $14,020,256 (BGN 24,311,826). The BT shares on the Bulgarian stock market on March 18, 2016 were being traded for approximately $34 (BGN 50) per share, yet he sold his on the same day for the exaggerated price of $44 (BGN 66) per share.

    c. Peevski, through his 100% ownership of NSN Investment, EEOD, which on December 15, 2015 became 100% owner of Comso Tabacco, EOOD, a company registered in Bulgaria, which owned 18% of Yuri Gagarin with the outstanding FIB debt arising from the Ayr funds used to pay off the CCB debt. On April 20, 2016, the 18% Yuri Gagarin shares were extracted and sold to TGI for $3,995,040 (BGN 6,866,715) through TGI's daughter company Doreco Commerce, EOOD.

219. A few months, after the CCB debt extinguishment of the Five Companies, TGI and Faraj exercise the VTB call option for 79.83% of Bulgartabac Holding and Faraj gains full access to the distribution channels in the Middle East region. In August 2015, NSN Investment, a company registered in Bulgaria listing Peevski as the sole owner, was listed

as the sole owner of Tabaco Investment, EOOD. In December 2015, NSN Investment was listed as the sole owner of Comso Tabacco.

220.  Upon information and belief, Comso Tabacco and Tabaco Investment respectively owned 18% in Yurii Gagarin and 5% in Bulgartabac. Both interests inured to the benefit of Peevski, who sold these two share positions, five and seven months later, on March 18, 2016 and on April 20, 2016, respectively, to TGI, a UAE entity.

221.  Peevski received $14,020,256 (BGN 24 million) for the sale of the 5% shares held in Tabaco Investment and $3,995,040 (BGN 6,866,714) for the 18% shares interest in Yurii Gagarin extracted from Comso Tabacco.

**U.S. Bankruptcy Court in Dallas, Texas Deems Ayr Owner of the Funds**

222.  On October 9, 2014, APD Attorney Maria Nakova advised both Harris in his capacity as President and General Manager for Ayr and the sole Executive Director of APD, and Angelov as then-acting Chairperson of the APD Board of Directors, of the need to take immediate legal action to protect the Funds against any FIB claims to those funds, including bringing the matter before the appropriate U.S. authorities under relevant U.S. law.

223.  Neither Harris nor any of the other defendants took steps to protect the Funds at CCB.

224.  To the contrary, the day after Maria Nakova's instruction to take action, Harris, on October 10, 2014, on behalf of Ayr filed for No Asset bankruptcy in the United States— omitting any mention of the fact that, per Bulgarian court rulings as Harris knew, Ayr did have an asset in the Funds held in CCB and APD. Harris also left off APD as an asset which was a wholly owned subsidiary of Ayr. Ayr and Harris were compelled, only after Harris' multiple sworn examinations in the U.S. bankruptcy proceeding revealed Ayr had