# EXHIBIT 1-13

251. Minev, Mutafchiev, Mellon Bank, and Eaton Vance, as shareholders of FIB, knowingly and deliberately undercapitalized FIB to be able to avoid obligations and camouflage its officers and shareholders fraudulent conduct arising from FIB's SBP actions, including, but without limitation. FIB's actions and consent to the transfer of SBP construction loan proceeds on the two SBP FIB loans to Bank of Valletta and the third loan of €2 million to FIB's Cypress branch which was to the detriment of their investors and creditors, the plaintiffs.

252. As shareholders, Minev, Mutafchiev, Mellon Bank, and Eaton Vance completely dominated FIB and made all material decisions, including, but without limitation, the decision to invest in and develop the SBP; the decision to engage in fraudulent business dealings with Angelov, Harriott, and FIB; the decision to forge the payment order authorization to fraudulently and unlawfully retrieve the Funds from CCB; and, upon information and belief, the decision to ignore these suspicious loans and financial activities by FIB of which they knew or should have known as shareholders receiving regular shareholder reports on FIB's financial activities.

253. The fraudulent activities committed by Minev, Mutafchiev, Mellon Bank, and Eaton Vance through FIB as a mere instrumentality for their own personal gains as its alter egos and in complete unlawful disregard of FIB's corporate identity, including the maker, the recipient, and the date and the place of the transmission of the fraudulent statements, are set out in the Complaint at ¶¶ 42–46, 49–51, 64–75, 79–106, 108–15, 120–34, 136–58, 161, 162, 166–75, 181–91, 217-19.

254. Pursuant to the facts averred in the previous paragraph, Minev, Mutafchiev, Mellon Bank, and Eaton Vance displayed a reckless and wanton pattern of undertaking and/or ignoring FIB's fraudulent financial undertakings in a manner designed to further their own

interests in pursuing the SBP fraud with the First Group and Second Group and reduce their own potential liability behind the corporate shield of FIB at the expense of the creditors of the SBP including the plaintiffs.

255.  By virtue of the foregoing, FIB primarily transacted the personal business of Minev, Mutafchiev, Mellon Bank, and Eaton Vance rather than its own business with these shareholders the dominators of FIB to the extent that FIB lost its separate corporate identity and for all intents and purposes was the alter ego of these shareholders as evidenced by the facts averred above.

256.  Piercing the corporate veil of FIB is therefore necessary to achieve justice and the equitable result necessitated by Minev, Mutafchiev, Mellon Bank, and Eaton Vance's domination of FIB and required to right the wrong in the loss of the Funds as a direct result thereof, that is, the return of the Funds, to which plaintiffs as creditors and investors had and have a legal and rightful claim.

257.  Accordingly, the plaintiffs are entitled to disregard the corporate existence of FIB so as to hold defendants Minev, Mutafchiev, Mellon Bank, and Eaton Vance directly personally liable for FIB's liability to the plaintiffs arising from from plaintiffs' positions as creditors and investors in the failed SBP which FIB irresponsibly and fraudulently sought to fund and ultimately sucked dry of its value in the form of the Funds.

258.  As a direct, proximate, and foreseeable result of the fraud and other wrongs Minev, Mutafchiev, Mellon Bank, and Eaton Vance committed as the dominators and alter egos of FIB as a mere instrumentality to its shareholders, plaintiffs are entitled to recover the loss of the Funds in the amount of at least $65 million, the exact amount to be proven at trial.

259. Plaintiffs furthermore request a declaratory judgment that Minev, Mutafchiev, Mellon Bank, and Eaton Vance are the alter egos of FIB.

## COUNT III
### Piercing the Corporate Veil and Alter Ego
### (As to Harriott and Grant Capital)

260. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 259 of the Complaint.

261. As the Director of Grant Capital, Harriott completely dominated Grant Capital and made all material decisions for the entity, including, but without limitation, the decision to divert funds from the 2007, 2008, and 2009 FIB loans to Grant Capital in Malta to, *inter alia*, fund the Mexican bond scheme and thereby perpetrate a fraud on the plaintiffs.

262. The fraudulent activities committed by Harriott through Grant Capital as a mere instrumentality for Harriott as its alter ego and in complete unlawful disregard of Grant Capital's corporate identity, including the maker, the recipient, and the date and the place of the transmission of the fraudulent statements, are set out in the Complaint at ¶¶ 47.

263. Pursuant to the facts averred in the previous paragraph, Harriott displayed a reckless and wanton pattern of dealing through Grant Capital in a manner designed to further Harriott's own interests in pursuing the SBP fraud with the First Group and Second Group and unlawfully reduce his own potential liability behind the corporate shield of Grant Capital at the expense of the plaintiffs.

264. By virtue of the foregoing, Grant Capital transacted the personal business of Harriott rather than its own business with Harriott the dominator of Grant Capital to the extent that Grant Capital lost its separate corporate identity and for all intents and purposes was the alter ego of Harriott as evidenced by the facts averred above.

265. Piercing the corporate veil of Grant Capital is therefore necessary to achieve justice and the equitable result necessitated by Harriott's domination of Grant Capital and required

to right the wrong in the loss of the Funds as a direct and proximate result thereof, that is, the return of the Funds, to which plaintiffs as creditors and investors had and have a legal and rightful claim.

266. Accordingly, the plaintiffs are entitled to disregard the corporate existence of Grant Capital so as to hold defendant Harriott directly personally liable for Grant Capital's participation in the fraud perpetrated on the plaintiffs related to the SBP.

267. As a direct, proximate, and foreseeable result of the fraud and other wrongs Harriott committed as the dominator and alter ego of Grant Capital as a mere instrumentality to Harriott, plaintiffs are entitled to recover the loss of the Funds in the amount of at least $65 million, the exact amount to be proven at trial.

268. Plaintiffs furthermore request a declaratory judgment that Harriott is the alter ego of Grant Capital.

## COUNT IV
### Piercing the Corporate Veil and Alter Ego
### (As to Angelov and Blue Finance and All Seas Management)

269. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 268 of the Complaint.

270. As the owner of Blue Finance and All Seas Management, Angelov completely dominated Blue Finance and All Seas Management and made all material decisions for the entities, including, but without limitation, *inter alia*, disguising the money transfers to All Seas Management Ltd., an entity owned and controlled solely by Angelov, and Blue Finance Limited, an entity owned and controlled solely by Angelov, both Marshall Island registered entities, to look like legitimate investments in SBP.

271. The fraudulent activities committed by Angelov through Blue Finance and All Seas Management as a mere instrumentalities for Angelov as their alter ego and in complete unlawful disregard of Blue Finance and All Seas Management's corporate identities,

including the maker, the recipient, and the date and the place of the transmission of the fraudulent statements, are set out in the Complaint at ¶¶ 55 and 91.

272. Pursuant to the facts averred in the previous paragraph, Angelov displayed a reckless and wanton pattern of dealing through Blue Finance and All Seas Management in a manner designed to further Angelov's own interests in pursuing the SBP fraud with the First Group and Second Group and unlawfully reduce his own potential liability behind the corporate shield of Blue Finance and All Seas Management at the expense of the plaintiffs.

273. By virtue of the foregoing, Blue Finance and All Seas Management transacted the personal business of Angelov rather than its own business with Angelov the dominator of Blue Finance and All Seas Management to the extent that Blue Finance and All Seas Management lost their individual separate corporate identities and for all intents and purposes was the alter ego of Angelov as evidenced by the facts averred above.

274. Piercing the corporate veil of Blue Finance and All Seas Management is therefore necessary to achieve justice and the equitable result necessitated by Angelov's domination of Blue Finance and All Seas Management and required to right the wrong in the loss of the Funds as a direct and proximate result thereof, that is, the return of the Funds, to which plaintiffs as creditors and investors had and have a legal and rightful claim.

275. Accordingly, the plaintiffs are entitled to disregard the corporate existence of Blue Finance and All Seas Management so as to hold defendant Angelov directly personally liable for Blue Finance and All Seas Management's participation in the fraud perpetrated on the plaintiffs related to the SBP.

276. As a direct, proximate, and foreseeable result of the fraud and other wrongs Angelov committed as the dominator and alter ego of Blue Finance and All Seas Management as a mere instrumentality to Angelov, plaintiffs are entitled to recover the