# EXHIBIT 1-14

loss of the Funds in the amount of at least $65 million, the exact amount to be proven at trial.

277. Plaintiffs furthermore request a declaratory judgment that Angelov is the alter ego of Blue Finance and All Seas Management.

## COUNT V
## 11 U.S.C. §§ 548 and 550
### Fraudulent Transfer of Debtor's Interest in Property
### (As to FIB, Minev, Mutafchiev, Mellon Bank, and Eaton Vance)

278. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 277 of the Complaint.

279. Plaintiffs as purchasers of the U.S. Trustee's interests in Ayr's interests pursuant to Ayr's U.S. bankruptcy proceedings bring this claim against defendant Harris, as creator, owner, and Director of both Ayr and Ayr's Bulgarian-registered subsidiary, APD.

280. The debtor, Ayr by and through Harris, had an interest in the property of the Funds as proceeds from the APD bankruptcy sale of the land held by APD in Bulgaria that was supposed to be used for the SBP. This interest is confirmed by Bulgarian and U.S. court rulings affirming Ayr's ownership of the Funds as an asset, as laid out above in ¶¶ 138, 222, and 224 of the Complaint.

281. Harris filed for bankruptcy on behalf of Ayr on October 10, 2014.

282. The Funds were stolen by FIB, as a direct and proximate result of Harris' failure to take steps to protect the funds despite multiple warnings, from CCB on or about October 24, 2014.

283. Harris committed a fraudulent conveyance when he permitted FIB to seize the Funds held in CCB and which belonged to Ayr as an asset of the defunct Ayr subsidiary, APD.

284. Harris' allowance of FIB seizing the funds without right functioned for all intents and purposes as a conveyance or transfer.

285. Accordingly, the transfer was made within one year of the filing of the bankruptcy petition, and at the time of the fraudulent transfer of the Funds, debtor Ayr by and through Harris was insolvent at the time of the transfer and become further insolvent as a result thereof.

286. The conveyance was made without fair consideration and Ayr, by and through Harris, thus received nothing in return, which was less than a reasonably equivalent value in exchange for such transfer, as FIB paid no fair consideration for the funds, which were in an amount of more than $65 million; FIB exchanged no property nor was any antecedent debt of Ayr to FIB paid off in return for the Funds; nor did FIB receive the Funds in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the Funds.

287. Therefore, pursuant to 11 U.S.C. § 550, plaintiffs, as purchasers and rightful holders of the U.S. bankruptcy trustee's rights arising out of the Ayr bankruptcy proceeding, seek to recover, for the benefit of the estate, the property transferred, namely the Funds or the value of such property in an amount no less than $65 million, the exact amount to be proven at trial.

### COUNT VI
**Breach of Contract**
**(As to Ayr, Harris, Angelov, and FIB, and Minev, Mutafchiev, Mellon Bank, and Eaton Vance)**

288. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 287 of the Complaint.

289. Harris, Angelov, and FIB breached the explicit and material terms of the agreements dated September 15, 2009; June 4, 2010; and December 29, 2009 (hereinafter "the Loans Contracts").

290. The terms of the Loans Contracts required Harris, Angelov, and FIB to appropriately and responsibly manage the SBP, and properly apply the FIB construction loans related to the SBP.

291. There was an implied duty of good faith in the performance of the Loan Contracts.

292. The above defendants failed and/or refused to meet their obligations under the Loans Contracts, and breached the Loans Contracts by, *inter alia*, failing to properly manage and invest plaintiffs' monetary contributions to SBP when they, instead, stole those contributions and failed to disclose their ulterior scheme and actions to the plaintiffs.

293. Those breaches were material.

294. Plaintiffs at all times upheld their obligations as creditors and investors under the Loans Contracts.

295. As a direct, proximate, and foreseeable result of the defendants' breaches, plaintiffs sustained injury and damage, including the loss of the benefit of their bargain, increased costs, expenses and fees, and loss of profits, including, specifically, the loss of their investment in the amount of at least $65 million, the exact amount to be determined at trial.

### COUNT VII
### Breach of Contract
### (As to Ayr, Harris, Harriott, Angelov, and FIB, and
### Minev, Mutafchiev, Mellon Bank, and Eaton Vance)

296. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 295 of the Complaint.

297. Harris, Harriott, Angelov, and FIB breached the explicit and material terms of the agreements between them and the plaintiffs dated March 28, 2012 and November 27, 2013 (hereinafter "the Agreements").

298. The terms of the Agreements required Harris, Harriott, Angelov, and FIB to appropriately and responsibly manage the reorganization project for APD in order to avoid APD having to file for bankruptcy and destroy the means of realizing the SBP.

299. The terms of the Agreements also obligated these Defendants to comply with U.S. law governing fraud and criminal acts, and New York was the selected forum and U.S. law the choice of law in that chosen forum for all disputes related to the Agreements. All parties consented to this choice of law and choice of forum in signing the Agreements.

300. There was an implied duty of good faith in the performance of the Agreements.

301. The above defendants failed and/or refused to meet their obligations under the Agreements, and breached the Agreement by, *inter alia*, failing to properly manage and in fact never taking concrete steps to implement the reorganization of APD in order to save it from bankruptcy, which led in fact to APD filing for bankruptcy in Bulgaria.

302. Those breaches were material.

303. Plaintiffs at all times upheld their obligations as creditors and investors under the Agreements.

304. As a direct, proximate, and foreseeable result of the defendants' breaches, plaintiffs sustained injury and damage, including the loss of the benefit of their bargain, increased costs, expenses and fees, and loss of profits, including, specifically, the loss of their investment in the amount of at least $65 million, the exact amount to be determined at trial.

**COUNT VIII**
**Breach of Contract**
**(As to Angelov)**

305. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 304 of the Complaint.

306. Angelov breached the explicit and material terms of its July 16, 2007 contract with Rudersdal.

307. The terms of the contract required Rudersdal to provide €19 million towards obtaining the development and construction project for SBP and for Angelov to appropriately and responsibly obtain the right-to-build contract and pay the accompanying €10 million fee necessary to begin construction of the SBP.

308. There was an implied duty of good faith in the performance of the contract.

309. Angelov failed and/or refused to meet his obligations under the contract, and breached the contract by, *inter alia*, failing to pay the permitting fee and obtain the right-to-build contract because the money earmarked for that fee was already gone, as Angelov knew, towards acquiring the Mexican bonds per Angelov's scheme with Harriott and Harris. Angelov failed to return Rudersdal's €19 million and to take any other steps to acquire the funds needed to obtain the construction permit as required by the terms of the contract with Rudersdal.

310. Those breaches were material.

311. Rudersdal at all times upheld its obligations under the contract.

312. As a direct, proximate, and foreseeable result of the defendant's breaches, plaintiff Rudersdal sustained injury and damage, including the loss of the benefit of their bargain, increased costs, expenses and fees, and loss of profits, including, specifically, the loss in the amount of at least $15 million, the exact amount to be determined at trial.

## COUNT IX
### Tortious Interference with Contract
### (As to FIB, Minev, Mutafchiev, Mellon Bank, and Eaton Vance)