# EXHIBIT 1-15

313.     Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 312 of the Complaint.

314.     Based on the July 16, 2007 contract, Rudersdal had a business relationship whereby Angelov had to acquire the necessary right-to-build permit for the SBP as averred above and Rudersdal had to and did pay Angelov a total of €19 million.

315.     Angelov instructed Rudersdal to deposit the €19 million into his various bank accounts, including accounts at FIB in the amount of €5 million.

316.     FIB had full knowledge of the entire SBP and knowledge of the contract between Angelov and Rudersdal because Angelov negotiated with FIB the terms governing the accounts at FIB where the Rudersdal $6.632.653(€5 million) was deposited. The terms of the FIB accounts provided that any money deposited therein would go automatically toward paying off Angelov's designated debts or loans. Moreover, FIB knew from the Rudersdal payment orders accompanying Rudersdal's FIB deposits into the Angelov designated FIB accounts that the deposits were related to the July 16, 2007 contract, the business relationship with Angelov and SBP and not for Angelov's debt extinguishment.

317.     FIB improperly intentionally interfered with the performance of the July 16, 2007 contract without justification by diverting Rudersdal's deposited funds toward paying off Angelov's designated debts or loans and failing to instead place Rudersdal's funds in an account designated for Rudersdal SBP participation and safeguarding said funds for the purposes Rudersdal had assigned to them, thereby preventing the payment of the permit fee.

318.     As a direct, proximate, and foreseeable result of FIB's tortious interference with the July 16, 2007 contract, plaintiff Rudersdal sustained damages, including the loss of the benefit of their bargain, increased costs, expenses and fees, and loss of profits, including,

specifically, the loss in the amount of at least $6.632.653(€5 million), the exact amount to be determined at trial.

## COUNT X
### Breach of Fiduciary Duty
#### (As to Ayr, Harris, Harriott, Angelov, FIB, and Minev, Mutafchiev, Mellon Bank, and Eaton Vance)

319.    Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 318 of the Complaint.

320.    Harris, Harriott, Angelov, and FIB owed a fiduciary duty to plaintiffs arising out of their contractual and close business relationships and the policies, understandings, and instructions related thereto as described above. As such, they each owed plaintiffs a fiduciary duty including, without limitation, the duties of good faith, fair dealing, honestly, fairness, full disclosure and loyalty towards plaintiffs, and an obligation not to engage in self-dealing.

321.    These defendants breached their fiduciary duties to plaintiffs by failing to safeguard the Funds, by failing to act in accordance with their representations in the Loans Contracts and Agreements between them and the plaintiffs regarding plaintiffs' participation in SBP, by acting in a manner directly adverse to those Loans Contracts and Agreements, by failure to act in good faith in their handling of plaintiffs' investments, by engaging in self-dealing with plaintiffs' investments, and by failing to act with the required diligence in their business dealings with plaintiffs.

322.    In conspiracy with all the other defendants, Harris, Harriott, Angelov, and FIB orchestrated and carried out the theft of the Funds to benefit themselves by using the Funds to invest in the Mexican bonds escrow agreements and in facilitating and acquiescing in the paying off the debt of the Five Companies for personal gain. These benefits were grossly larger than the benefits to which Harris, Harriott, Angelov, and FIB would have

been entitled under the Loans Contracts and Agreements that they had entered into with plaintiffs ostensibly to realize the SBP.

323.    By virtue of the acts and fraudulent conduct averred above, Harris, Harriott, Angelov, and FIB knowingly, wantonly, maliciously, intentionally, and recklessly, with a conscious disregard of the rights of plaintiffs, breached their fiduciary duties to plaintiffs.

324.    As a direct, proximate, and foreseeable result of the unlawful use and taking of the Funds in contravention to defendants' fiduciary duties, to which plaintiffs never consented and were neither notified nor consulted, the plaintiffs suffered harm in the loss of more than $65 million, the exact amount to be proven at trial.

## COUNT XI
### Aiding and Abetting Breach of Fiduciary Duty
#### (As to Ayr, Harris, Harriott, Angelov, FIB, Minev, Mutafchiev, Mellon Bank, and Eaton Vance)

325.    Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 324 of the Complaint.

326.    Harris, Harriott, Angelov, and FIB owed a fiduciary duty to plaintiffs arising out of their contractual and close business relationships and the policies, understandings, and instructions related thereto as described above. As such, they each owed plaintiffs a fiduciary duty including, without limitation, the duties of good faith, fair dealing, honestly, fairness, full disclosure and loyalty towards plaintiffs, and an obligation not to engage in self-dealing.

327.    By virtue of the acts and fraudulent conduct averred above, Harris, Harriott, Angelov, and FIB knowingly, wantonly, maliciously, intentionally, and recklessly, with a conscious disregard of the rights of plaintiffs, breached their fiduciary duties to plaintiffs.

328.     Harris, Harriott, Angelov, and FIB each knew that each among them owed the aforesaid fiduciary duties to the plaintiffs pursuant to their individual fiduciary relationships with the plaintiffs.

329.     As alleged herein, Harris, Harriott, Angelov, and FIB each had actual knowledge that each among them violated their fiduciary duties to plaintiffs, *inter alia*, by reason of the fact that each were co-conspirators in the conspiracy to abscond with plaintiffs' investment in SBP and plaintiffs' right to the Funds; Harris, Harriott, and Angelov were parties to the Agreement and Supplemental Agreement with the plaintiffs regarding the details of the APD reorganization which were never carried out; and through communications between Angelov, Harris, and Harriott regarding funneling some of the Funds into the Mexican bonds scheme.

330.     By virtue of the acts and conduct alleged herein, Harris, Harriott, Angelov, and FIB knowingly, wantonly, maliciously, intentionally, and recklessly, with a conscious disregard of the rights of plaintiffs, provided substantial assistance to, and aided and abetted, each other among them in breaching their fiduciary duties to plaintiffs by affirmatively assisting, helping conceal, and/or failing to act when required to do so to prevent such breaches from occurring.

331.     As a direct, proximate, and foreseeable result of the foregoing, plaintiffs have sustained damages in the amount of $65 million, the exact amount to be proven at trial.

### COUNT XII
### Breach of Fiduciary Duty
### (As to BNB, Lyutov, and Kostadinchev)

332.     Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 331 of the Complaint.

333.     BNB and the two CCB BNB-appointed conservators, Lyutov and Kostadinchev, owed a fiduciary duty to plaintiffs arising out of their position as financial overseers and

regulators of CCB once CCB was put in receivership by BNB. As such, they each owed plaintiffs a fiduciary duty including, without limitation, the duties of good faith, fair dealing, honestly, fairness, full disclosure and loyalty towards plaintiffs, and an obligation not to engage in self-dealing.

334.      These defendants breached their fiduciary duties to plaintiffs by failing to safeguard the Funds, by acting in a manner directly adverse to plaintiffs' interest in and ownership of the funds by permitting the to be stolen and used to extinguish the debts of the Five Companies, by failure to act in good faith in their handling of the Funds, by engaging in self-dealing with the Funds, and by failing to act with the required diligence in their capacities as financial regulators in the context of CCB's financial crisis and receivership.

335.      In conspiracy with all the other defendants, BNB and the conservators orchestrated and carried out the theft of the Funds to benefit themselves by using and/or permitting and enabling the Funds to pay off the debt of the Five Companies for personal gain.

336.      By virtue of the acts and fraudulent conduct averred above, BNB and the two conservators knowingly, wantonly, maliciously, intentionally, and recklessly, with a conscious disregard of the rights of plaintiffs, breached their fiduciary duties to plaintiffs.

337.      As a direct, proximate, and foreseeable result of the unlawful use and taking of the Funds in contravention to defendants' fiduciary duties, to which plaintiffs never consented and were neither notified nor consulted, the plaintiffs suffered harm in the loss of more than $65 million, the exact amount to be proven at trial.

### COUNT XIII
### Aiding and Abetting Breach of Fiduciary Duty
### (As to BNB, Lyutov, and Kostadinchev)

338.      Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 337 of the Complaint.