# EXHIBIT 1-16

339.    BNB and the two CCB BNB-appointed conservators, Lyutov and Kostadinchev, owed a fiduciary duty to plaintiffs arising out of their position as financial overseers and regulators of CCB once BNB put CCB in receivership. As such, they each owed plaintiffs a fiduciary duty including, without limitation, the duties of good faith, fair dealing, honestly, fairness, full disclosure and loyalty towards plaintiffs, and an obligation not to engage in self-dealing.

340.    BNB and the two CCB BNB-conservators each knew that each among them owed the aforesaid fiduciary duties to the plaintiffs pursuant to their individual fiduciary status with the plaintiffs.

341.    These defendants breached their fiduciary duties to plaintiffs by failing to safeguard the Funds, by acting in a manner directly adverse to plaintiffs' interest in and ownership of the Funds by permitting the Funds to be retitled in names other than Plaintiffs, by permitting the Funds to be stolen and used to extinguish the debts of non related entities, the Five Companies, by failure to act in good faith in their handling of the Funds, by engaging in self-dealing with the Funds, and by failing to act with the required diligence in their capacities as financial regulators and fiduciaries in the context of CCB's receivership.

342.    In conspiracy with all the other defendants, BNB and the BNB-appointed conservators orchestrated and carried out the theft of the Funds to benefit themselves by using and/or permitting and enabling the Funds to pay off the debt of the Five Companies for personal gain.

343.    By virtue of the acts and conduct averred above, BNB and the two CCB BNB-conservators knowingly, wantonly, maliciously, intentionally, and recklessly, with a conscious disregard of the rights and ownership interests of plaintiffs, provided substantial

assistance to, and aided and abetted, each other among them in breaching their fiduciary duties to plaintiffs by affirmatively assisting, helping conceal, and/or failing to act when required to do so to prevent such breaches from occurring.

344.    As a direct, proximate, and foreseeable result of the foregoing, plaintiffs have sustained damages in the amount of $65 million, the exact amount to be proven at trial.

### COUNT XIV
### Unjust Enrichment
### (As to all defendants)

345.    Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 344 of the Complaint.

346.    Through their fraudulent and deceitful actions regarding the Funds, all defendants gained financial benefits, as set forth above as to each defendant, from the Funds at the the expense and to the financial loss to the plaintiffs of their entire, respective, investment in the SBP. Plaintiffs were deprived of the singular asset to recover as Ayr creditors with the defendants' unlawful taking of the Funds.

347.    The principles of equity and good conscience demand that all defendants not be permitted to remain unjustly enriched and that plaintiffs be fully compensated for their entire loss in the approximate amount of $65 million, the exact amount to be proven at trial.

### COUNT XV
### Fraudulent Concealment
### (As to Ayr, Harris, Harriott, Angelov, FIB, Minev,
### Mutafchiev, Mellon Bank, and Eaton Vance)

348.    Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 347 of the Complaint.

349.    Defendants Harris, Harriott, Angelov, and FIB had a duty as a result of their special and fiduciary relationships with plaintiffs as averred above to disclose to plaintiffs all

material facts related to SBP, the APD bankruptcy, and the safeguarding and use of the Funds.

350.    This duty arose from Harris, Harriott, Angelov, and FIB's fiduciary relationship with plaintiffs through their negotiations and contracts for plaintiffs' financial investment in the SBP.

351.    Harris, Harriott, Angelov, and FIB intentionally concealed the fact that the Funds in the CCB accounts had been stolen from the plaintiffs, and the fact that Harris, Harriott, Angelov, and FIB had a scheme to use the funds to enable the BT call option and buy the Mexican bonds and not to develop the SBP as they had represented to plaintiffs in business dealings.

352.    Harris, Harriott, Angelov, and FIB's deliberate failure to disclose their true intent to steal plaintiffs' investment while telling plaintiffs their investment would go to developing the SBP induced plaintiffs to invest in said project, and plaintiffs in fact relied on defendants' failure to disclose that fact.

353.    The fraudulent statements, including the maker, the recipient, and the date and the place of the transmission of the fraudulent statements, are set out in the Complaint at ¶¶ 40–44, 47–49, 62–73, 77–104, 106–12, 123–30, 134–56, 140–50, 140–58, 164–73, 179–89, 218–24.

354.    Each such failure to disclose was the result of the defendants' specific intent to defraud or deceive the plaintiffs out of the Funds.

355.    As a direct, proximate, and foreseeable result of Harris, Harriott, Angelov, and FIB's failure to disclose the fact that they intended to defraud plaintiffs of their investment and that the Funds had been stolen, and of plaintiffs' justifiable reliance and inducement to

act thereon, plaintiffs have sustained damages in the amount of $65 million, the exact amount to be proven at trial.

## COUNT XVI
### Fraudulent Concealment
### (As to BNB, Lyutov, and Kostadinchev)

356.    Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 355 of the Complaint.

357.    BNB and the two CCB BNB-appointed conservators, Lyutov and Kostadinchev, owed a fiduciary duty to plaintiffs arising out of their position as financial overseers and regulators of CCB once BNB put CCB in receivership. As such, they each owed plaintiffs a fiduciary duty including, without limitation, the duties of good faith, fair dealing, honestly, fairness, full disclosure and loyalty towards plaintiffs, and an obligation not to engage in self-dealing.

358.    BNB and the two CCB BNB-appointed conservators intentionally concealed the fact that FIB and other defendants were engaged in a fraud to become title owner and beneficiary to the Funds (loan repayment), the Funds in the CCB accounts had been stolen from the plaintiffs, and that BNB and the two CCB BNB-appointed conservators orchestrated a scheme to use the Funds to pay off the debts of the Five Companies to CCB in contravention to the Bulgarian court's order that the Funds be moved to a special account at Bulgarian Development Bank.

359.    BNB and the two CCB BNB-appointed conservators' deliberate failure to disclose their true intent to steal plaintiffs' investment and failure to disclose their appropriation of the Funds and application of them to extinguish the Five Companies' debts induced plaintiffs to stay the course and not take action against BNB and the two CCB BNB-

appointed conservators for the failure to safekeep the Funds, and plaintiffs in fact relied on defendants' failure to disclose those facts.

360. The fraudulent statements, including the maker, the recipient, and the date and the place of the transmission of the fraudulent statements, are set out in the Complaint at ¶¶ 62–73, 118–21, 140–58.

361. Each such failure to disclose was the result of the defendants' specific intent to defraud or deceive the plaintiffs out of the Funds.

362. As a direct, proximate, and foreseeable result of BNB and the two CCB BNB-appointed conservators' failure to disclose the fact that they intended to defraud plaintiffs of their investment and steal the Funds, and of plaintiffs' justifiable reliance and inducement to act thereon, plaintiffs have sustained damages in the amount of $65 million, the exact amount to be proven at trial.

## COUNT XVII
### Fraud
### (As to all defendants)

363. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 362 of the Complaint.

364. All defendants knew, or should have known, that the representations they made to the plaintiffs about SBP and the Funds would be reasonably relied upon by the plaintiffs.

365. Material portions of those representations and information were false, wrong, and inaccurate, and these defendants knew that those representations and information were false, wrong, and inaccurate (the "Misrepresentations").

366. These defendants fraudulently made the Misrepresentations intending that the plaintiffs would act on the Misrepresentations, and knowing that plaintiffs were likely to rely on the Misrepresentations which, if erroneous, would cause loss or injury.