# EXHIBIT 1-17

367.    The content of the Misrepresentations includes, but is not limited to, the following:

a.  Misrepresenting and/or failing to disclose material information regarding the 2007-2009 FIB loans to fund the development of the SBP as set forth above;

b.  Misrepresenting SBP as a suitable investment and viable development plan for plaintiffs to invest in, as set forth above;

c.  Failing to identify and/or alert plaintiffs to all material facts regarding the SBP project development or lack thereof, as set forth above;

d.  Misrepresenting and/or failing to disclose the need for additional funding to realize the SBP, as set forth above;

e.  Misrepresenting and/or failing to disclose the use of plaintiffs' financial investments in SBP to fund the Mexican bond escrow agreement, as set forth above;

f.  Misrepresenting and/or failing to disclose to plaintiffs that the reconstruction plan for APD was never funded and that defendants never intended that it would be, as set forth above;

g.  Misrepresenting and/or failing to disclose to plaintiffs defendants' knowledge of FIB's fraudulent claims as creditor to APD's bankruptcy proceedings, as set forth above;

h.  Misrepresenting and/or failing to disclose to plaintiffs FIB's multiple attempts to present claims to the Funds in the CCB accounts, as set forth above;

i.  Misrepresenting and/or failing to disclose to plaintiffs that the coal contracts were a mere sham to justify the FIB loans, as set forth above;

j.  Misrepresenting and/or failing to disclose to plaintiffs that CCB went into receivership after the run on the Bulgarian banks thus compromising the Funds, as set forth above;

> k. Misrepresenting and/or failing to disclose to plaintiffs that FIB had acquired access to the CCB accounts and that the Funds had been retitled and used to extinguish the Five Companies' unrelated CCB loans, as set forth above;
>
> l. Misrepresenting and/or failing to disclose to plaintiffs the interference of the Second Group to realize the extinguishment of the Five Companies' CCB debts with the Funds in order to enable the larger goal of the BT call option and close the CCB bank accounts, as set forth above;
>
> m. Misrepresenting to plaintiffs that Ayr did not possess the Funds as an asset when Harris on Ayr's behalf sought No Asset bankruptcy in Texas when in fact Ayr did, as set forth above;
>
> n. Misrepresenting and/or failing to disclose to plaintiffs Peevski's role in assisting FIB with FIB's need for government bailout funds;
>
> o. Failing to disclose to plaintiffs that the Funds were stolen and gone, which fact did not come to light until Ayr bankruptcy proceedings had run their course in Texas and the U.S. Bankruptcy Court declared the Funds to be an Ayr asset, by which time the Funds were long gone, as set forth above;
>
> p. Misrepresenting and/or failing to disclose to plaintiffs that Harris did not and never intended to take any action to protect the Funds from the onslaught of actions by the other defendants to obtain the Funds, as set forth above.

368.    The Misrepresentations, including the maker, the recipient, and the date and the place of the transmission of the Misrepresentations, are set out in the Complaint at ¶¶ 40–44, 47–49, 62–73, 77–104, 106–12, 123–30, 134–56, 140–50, 140–58, 164–73, 179–89, 218–24.

369.    The plaintiffs did in fact rely on those Misrepresentations.

370.    Their reliance on those Misrepresentations was reasonable and foreseeable.

371.    All defendants made those misrepresentations with the malicious intent to defraud and deceive the plaintiffs, and to induce the plaintiffs' reliance on the Misrepresentations to plaintiffs' injury, harm, loss, and detriment, and plaintiffs were in fact misled and deceived by the Misrepresentations, and in fact reasonably relied on the Misrepresentations.

372.    The Misrepresentations were false and fraudulent, and were known by defendants to be false and fraudulent when made, and thereafter, were made with reckless indifference in disregard for the truth or falsity of the Misrepresentations, displaying a high degree of moral culpability and manifesting a conscious and reckless disregard for the rights of the plaintiffs bordering on criminality.

373.    Defendants had actual knowledge as to the Misrepresentations.

374.    As a direct, proximate, and foreseeable consequence of plaintiffs' reliance on the Misrepresentations plaintiffs have sustained damages in excess of $65 million, the exact amount to be proven at trial.

## COUNT XVIII
### Aiding and Abetting Fraud
### (As to all defendants)

375.    Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 374 of the Complaint.

376.    By the conduct averred above, all defendants made material Misrepresentations to plaintiffs, including omissions of material facts these defendants were required to disclose, concerning, *inter alia*, the use of the Funds and the state of plaintiffs' investment in the SBP.

377.    The defendants made such misrepresentations with intent to defraud plaintiffs, to enable them to loot the Funds maintained at CCB for their own personal benefit.

378.     Plaintiffs justifiably and foreseeably relied upon these defendants'
misrepresentations and failure to disclose material facts.

379.     All defendants each had actual knowledge of and notice that each among them had
made misrepresentations of material fact and omitted facts each was required to disclose
to plaintiffs.

380.     The Misrepresentations were false and fraudulent, and were known by defendants
to be false and fraudulent when made, and thereafter, were made with reckless indifference
in disregard for the truth or falsity of the Misrepresentations, displaying a high degree of
moral culpability and manifesting a conscious and reckless disregard for the rights of the
plaintiffs bordering on criminality.

381.     These defendants knowingly, wantonly, maliciously, intentionally, and recklessly,
with a conscious disregard of the rights of plaintiffs, aided and abetted each among them
in perpetrating a fraud on plaintiffs. Specifically, each defendant provided substantial
assistance to advance the fraud's commission by, without limitation, the following acts:

    a.  Disguising the money transfers to All Seas Management Ltd., an entity owned and
controlled solely by Chavdar Angelov, and Blue Finance Limited, an entity owned
and controlled solely by Chavdar Angelov, both Marshall Island registered entities,
to look like legitimate investments in a large property development project by Ayr,
the Silver Beach project, as averred above;

    b.  Failing to take any steps to protect the Funds in CCB despite notice and warning
from Tomov and APD Attorney Maria Nakova that FIB was pursuing them, as
averred above;

    c. Filing for fraudulent No Asset U.S bankruptcy on behalf of Ayr to allow FIB to reach around the automatic stay on Ayr's assets to get the Funds after FIB unsuccessfully tried to be declared a creditor of APD, as described above;

    d. Collaborating to divert $39,823,594 from the first three SBP loans FIB to the trustee escrow agreement to purchase the ancient Mexican bonds, as described above;

    e. Failing to repay any of the loans to FIB on the SBP property, so that APD was eventually forced to declare bankruptcy and the SBP property forced to be sold as a result, as described above; and

    f. Using the raid on the banks in Bulgarian to put CCB into receivership by BNB which allowed BNB and the CCB BNB-appointed conservators to re-appropriate the Funds being held at CCB to extinguish the Five Companies' debts in contravention to the automatic stay issued in the U.S. bankruptcy proceedings for Ayr as well as the Bulgarian court's July 11, 2014 order.

382.     Defendants each had actual knowledge of the fraudulent scheme to steal the Funds for the larger, ultimate goal of realizing the BTH and Vivacom call options.

383.     As a direct, foreseeable, and proximate result of all defendants aiding and abetting each other to carry out the fraud, plaintiffs sustained damages in excess of $65 million, the exact amount to be proven at trial.

## COUNT XIX
### N.Y. Debt. & Cred. Law § 273
### Fraudulent Conveyance by Insolvent
### (As to Ayr and Harris)

384.     Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 383 of the Complaint.