# EXHIBIT 1-18

385.    Defendant Harris committed a constructive fraudulent conveyance when he permitted FIB to seize the Funds held in CCB and which belonged to Ayr as an asset of the defunct Ayr subsidiary, APD.

386.    Harris' allowance of FIB seizing the funds without right functioned for all intents and purposes as a conveyance or transfer.

387.    The conveyance was made without fair consideration as FIB paid no fair consideration for the funds, which were in an amount of more than $65 million; FIB exchanged no property nor was any antecedent debt of Ayr to FIB paid off in return for the Funds; nor did FIB receive the Funds in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the Funds.

388.    By conveying the Funds to FIB, Harris thereby rendered Ayr insolvent as the Funds was the only asset of value which Ayr held that could be used to meet and satisfy its outstanding creditors' claims.

389.    Plaintiffs as creditors and holders of the trustee's claims of Ayr therefore demand that the conveyance in an amount no less than $65 million, the exact amount to be determined at trial, be returned to Ayr and put towards satisfaction of the creditors' claims thereto

### COUNT XX
### N.Y. Debt. & Cred. Law § 276
### Conveyance Made with Intent to Defraud
### (As to Ayr and Harris)

390.    Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 389 of the Complaint.

391.    Defendant Harris committed an actual fraudulent conveyance when he fraudulently filed for No Asset bankruptcy by failing to disclose Ayr's assets in its subsidiary APD and

in the Funds held in CCB, thereby shielding these assets from the automatic stay on Ayr's assets put in place by the U.S. bankruptcy court and permitting FIB to seize the Funds held in CCB which belonged to Ayr as an asset of the defunct Ayr subsidiary, APD.

392.     Harris' intentional fraudulent bankruptcy filing and subsequent deliberate failure to take action to protect the Funds from FIB's claims despite having been notified of these attempts on several occasions by Nakova and Tomov (see *supra* ¶¶ 127–30, 129, 138, 222, and 224) and subsequent allowance of FIB to seize the funds without right functioned for all intents and purposes as a conveyance or transfer.

393.     The fraudulent bankruptcy filing and conveyance, including the maker, the recipient, and the date and the place of the transmission, are set out in the Complaint at ¶¶ 77–104, 106–12, 123–30, 134–36, 218–23.

394.     The fraudulent conveyance was made without fair consideration as FIB paid no fair consideration for the funds, which were in an amount of more than \$65 million; FIB exchanged no property nor was any antecedent debt of Ayr to FIB paid off in return for the Funds; nor did FIB receive the Funds in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the Funds.

395.     The Funds conveyed to FIB had value out of which the creditors, the plaintiffs, could have realized their portion of their claims against Ayr in its bankruptcy proceedings for their investment in the failed SBP.

396.     By conveying the Funds to FIB, Harris thereby rendered Ayr insolvent as the Funds was the only asset of value which Ayr held that could be used to meet and satisfy its outstanding creditors' claims.

397.     Harris conveyed the Funds to FIB with actual intent to defraud the plaintiffs, as evidence by Harris' deliberate fraudulent filing for bankruptcy for Ayr without declaring the Funds and through Harris' inexcusable failure to take any steps or actions to protect the Funds from FIB's unrightful claims despite Harris' actual knowledge of FIB's attempts so to steal the funds.

398.     Moreover, under oath at two 341 meetings during Ayr's bankruptcy proceedings, Harris upon being questioned about any outstanding assets further failed to declare the Funds, or Ayr's subsidiary APD, thereby deliberately continuing to defraud the U.S. bankruptcy court and the plaintiffs as creditors thereby.

399.     Upon being found out to have failed to declare the Funds in Ayr's bankruptcy proceedings, Harris repeatedly failed to correct this material misrepresentation because he actually, and successfully, intended to defraud the plaintiffs as creditors regarding the Funds as an Ayr asset to which they had a legal claim.

400.     Plaintiffs as creditors and holders of the trustee's claims of Ayr therefore demand that the conveyance in an amount no less than $65 million, the exact amount to be determined at trial, be returned to Ayr and put towards satisfaction of the creditors' claims thereto.

## COUNT XXI
### Negligent Misrepresentation
### (As to all defendants)

401.     Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 400 of the Complaint.

402.     Defendants had a duty as a result of their special and fiduciary relationships with plaintiffs as averred above to disclose to plaintiffs all material facts related to SBP, the APD bankruptcy, and the safeguarding and use of the Funds.

403.    Defendants knew or should have known, that the representations they made to the plaintiffs about SBP would be relied upon by the plaintiffs, and that their fiduciary relationship as averred above imposed on them the duty to impart correct information to the plaintiffs.

404.    Material portions of those representations and information were false, wrong, and inaccurate, and these defendants knew that those representations and information were false, wrong, and inaccurate (the "Misrepresentations").

405.    These defendants fraudulently made the Misrepresentations intending that the plaintiffs would reasonably act on the Misrepresentations, and knowing that plaintiffs were likely to reasonably rely on the Misrepresentations which, if erroneous, would cause loss or injury.

406.    The content of the Misrepresentations includes the following:

   a.    Misrepresenting and/or failing to disclose material information regarding the 2007-2009 FIB loans to fund the development of the SBP as set forth above;

   b.    Misrepresenting SBP as a suitable investment and viable development plan for plaintiffs to invest in, as set forth above;

   c.    Failing to identify and/or alert plaintiffs to all material facts regarding the SBP project development or lack thereof, as set forth above;

   d.    Misrepresenting and/or failing to disclose the need for additional funding to realize the SBP, as set forth above;

   e.    Misrepresenting and/or failing to disclose the use of plaintiffs' financial investments in SBP to fund the Mexican bond escrow agreement, as set forth above;

f. Misrepresenting and/or failing to disclose to plaintiffs that the reconstruction plan for APD was never funded and that defendants never intended that it would be, as set forth above;

g. Misrepresenting and/or failing to disclose to plaintiffs defendants' knowledge of FIB's fraudulent claims as creditor to APD's bankruptcy proceedings, as set forth above;

h. Misrepresenting and/or failing to disclose to plaintiffs FIB's multiple attempts to present claims to the Funds in the CCB accounts, as set forth above;

i. Misrepresenting and/or failing to disclose to plaintiffs that the coal contracts were a mere sham to justify the FIB loans, as set forth above;

j. Misrepresenting and/or failing to disclose to plaintiffs that CCB went into receivership after the run on the Bulgarian banks thus compromising the Funds, as set forth above;

k. Misrepresenting and/or failing to disclose to plaintiffs that FIB had acquired access to the CCB accounts and that the Funds had been retitled and used to extinguish the Five Companies' unrelated CCB loans, as set forth above;

l. Misrepresenting and/or failing to disclose to plaintiffs the interference of the Second Group to realize the extinguishment of the Five Companies' CCB debts with the Funds in order to enable the larger goal of the BT call option and close the CCB bank accounts, as set forth above;

m. Misrepresenting to plaintiffs that Ayr did not possess the Funds as an asset when Harris on Ayr's behalf sought No Asset bankruptcy in Texas when in fact Ayr did, as set forth above;