# EXHIBIT 1-19

n. Misrepresenting and/or failing to disclose to plaintiffs Peevski's role in assisting FIB with FIB's need for government bailout funds;

o. Failing to disclose to plaintiffs that the Funds were stolen and gone, which fact did not come to light until Ayr bankruptcy proceedings had run their course in Texas and the U.S. Bankruptcy Court declared the Funds to be an Ayr asset, by which time the Funds were long gone, as set forth above;

p. Misrepresenting and/or failing to disclose to plaintiffs that Harris did not and never intended to take any action to protect the Funds from the onslaught of actions by the other defendants to obtain the Funds, as set forth above.

407. The Misrepresentations, including the maker, the recipient, and the date and the place of the transmission of the Misrepresentations, are set out in the Complaint at ¶¶ 40–44, 47–49, 62–73, 77–104, 106–12, 123–30, 134–56, 140–50, 140–58, 164–73, 179–89, 218–24.

408. The plaintiffs were misled and deceived by the Misrepresentations and did in fact rely on those Misrepresentations.

409. Their reliance on those Misrepresentations was reasonable and foreseeable.

410. As a direct, proximate, and foreseeable consequence of that reliance plaintiffs sustained loss, injury, and damage.

411. As a direct, foreseeable, and proximate result of the Misrepresentations, plaintiffs have sustained damages in excess of $65 million, the exact amount to be proven at trial.

## COUNT XXII
### Negligence
**(As to Ayr, Harris, Harriott, Angelov, FIB, Minev, Mutafchiev, Mellon Bank, and Eaton Vance)**

412. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 411 of the Complaint.

413. Harris, Harriott, Angelov, and FIB, they owed a fiduciary duty to plaintiffs arising out of their contractual and close business relationships and the policies, understandings, and instructions related thereto as averred above. As such, they each owed plaintiffs a fiduciary duty including, without limitation, the duties of good faith, fair dealing, honestly, fairness, full disclosure and loyalty towards plaintiffs, and an obligation not to engage in self-dealing.

414. Harris, Harriott, Angelov, and FIB knew or should have known they breached that duty when they took steps to make possible the theft and did in fact steal the Funds and used them to pay of the Five Companies' debts at CCB and purchase the Mexican bonds, which was not the use of the Funds to which plaintiffs had agreed.

415. Harris, Harriott, Angelov, and FIB's breach of their duty directly, proximately, and foreseeably caused injury to the plaintiffs in the amount of $65 million.

416. Plaintiffs in fact suffered a loss of approximately $65 million, the exact amount to be proven at trial.

## COUNT XXIII
### Negligence
### (As to BNB, Lyutov, and Kostadinchev)

417. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 416 of the Complaint.

418. BNB and the two CCB BNB-appointed conservators, Lyutov and Kostadinchev, owed a fiduciary duty to plaintiffs arising out of their position as financial overseers and regulators of CCB once CCB was put in receivership by BNB. As such, they each owed plaintiffs a fiduciary duty including, without limitation, the duties of good faith, fair dealing, honestly, fairness, full disclosure and loyalty towards plaintiffs, and an obligation not to engage in self-dealing.

419. BNB, Lyutov, and Kostadinchev knew or should have known they breached that duty when they took steps to make possible the theft and did in fact steal the Funds and used them to pay of the Five Companies' debts at CCB, which was not the use of the Funds to which plaintiffs had agreed.

420. BNB, Lyutov, and Kostadinchev breach of their duty directly, proximately, and foreseeably caused injury to the plaintiffs in the amount of $65 million.

421. Plaintiffs in fact suffered a loss of approximately $65 million, the exact amount to be proven at trial.

## COUNT XXIV
### Conversion
### (As to all defendants)

422. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 421 of the Complaint.

423. The Funds stolen were specific and identifiable property, namely, a liquid cash asset in CCB bank accounts, belonging to the plaintiffs.

424. Plaintiffs, as investors in the SBP and as Ayr U.S. bankruptcy proceedings creditors, had an ownership interest and rightfully possessed and/or were entitled to control the Funds before they were stolen by the defendants.

425. All defendants exercised unlawful and unauthorized control and dominion over the Funds when they unlawfully stole them from the plaintiffs and distributed them to purchase the Mexican Bonds and/or pay off the debts of the Five Companies deriving direct economic benefit therefrom for themselves.

426. The defendants' exercise of such unlawful and unauthorized dominion and control over the Funds altered the Funds' condition because they unlawfully changed the ownership status of the bank accounts which housed the Funds in removing APD as the rightful owner, and excluded plaintiffs from exercising their rights over the Funds and

unlawfully deprived plaintiffs of those Funds when the Funds were used to pay off unrelated CCB corporate debts for the sole benefit of defendants.

427. As a direct, proximate, and foreseeable result, plaintiffs were actually harmed in the loss of at least approximately $65 million which were stolen from the CCB accounts, the exact amount to be proven at trial.

## COUNT XXV
## Civil Conspiracy
## (As to all defendants)

428. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 427 of the Complaint.

429. The First Group, defendants Harris, Harriott, Angelov, and FIB combined by explicit and/or inferred agreement and understanding to accomplish an unlawful act and to use unlawful means to accomplish an act not itself illegal in furtherance of an explicit and/or inferred conspiratorial agreement between the First Group and the Second Group (all defendants) to unlawfully divest plaintiffs of their investment in SBP and interest in the Funds.

430. The First Group each committed overt acts in furtherance of that agreement including, *inter alia*, negotiating and notarizing documents in New York and Texas related to the SBP Contracts and dealings; opening a bank account in HSBC Bank in New York allegedly to hold funds purportedly designated for APD's reorganization and reconstruction, with no intent to effectuate; fraudulently filing for No Asset bankruptcy for Ayr in Texas despite the fact that APD owed Ayr wich did hold the Funds as an asset; failing to take any steps to protect the Funds in CCB from being stolen by FIB to pay off the Five Companies' debts; and failing to disclose any of these or other wrongdoings to the plaintiffs.

431. The First Group intentionally participated in furthering this common purpose or plan through fraud, breach of contract, unjust enrichment, fraudulent concealment, breach of their fiduciary duties, conversion, negligence, negligent misrepresentation, and aiding and abetting to realize the conspiracy.

432. The Second Group participated as co-conspirators intentionally participated in furthering this common purpose or plan through fraud, breach of fiduciary duty, tortious interference with contract, negligent misrepresentation, conversion, unjust enrichment, and aiding and abetting to divest plaintiffs of their investment in order to obtain fees, commissions, and personal gains, to their sole personal benefit.

433. All defendants as co-conspirators knew, or should have known, of the plan for the theft of the Funds. All defendants as co-conspirators knew, or should have known, that the cover-up of that theft constituted misrepresentation and deceit, and an unlawful conspiracy to wrongfully divest plaintiffs of their property amounting to an international criminal enterprise. All defendants as co-conspirators of each other knew of, or should have known of, and recklessly disregarded the wrongful conduct of the others, and failed to supervise, review, or report on the wrongful conduct which led to the Funds being stolen, and facilitated the wrongful conduct of the other conspirators by such failures.

434. As a consequence of participation in this conspiracy, all defendants and each of them are liable for the misconduct of the other members of the conspiracy.

435. All defendants conspired to ensure that the Funds were appropriated for their benefit and profit, with the direct, proximate, and foreseeable loss and damage to plaintiffs including the loss of the benefit of their bargain, increased costs, expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships,