# EXHIBIT 1-21

459. At all times relevant to the allegations in the Complaint, the Second Enterprise engaged in, or its activities affected, interstate and/or foreign commerce. Through the Second Enterprise, defendants fraudulently funneled plaintiffs' investments into various banks, telecommunication company and cigarette manufacturing and distribution businesses and channels touching the U.S., European Union, Russian, Middle Eastern, and other interstate markets and aspects of foreign commerce as averred above.

460. The concerted purpose of the First Enterprise and the Second Enterprise was, through a series of illicit and illegal devises (principally through fraud and conversion), to wrongfully obtain, either directly or indirectly, the investment in the SBP that belonged to the plaintiffs in the approximate amount of $65 million.

461. The First Group, through the leadership of Harris and FIB, masterminded the scheme as to the First Enterprise and their participation in the First Enterprise, along with the participation of the rest of the defendants (see *supra* ¶¶ 40–44, 47–49, 62–73, 77–104, 106–12, 123–30, 134–36).

462. The Second Group, through the leadership of Peevski, masterminded the scheme as to the Second Enterprise and their participation in the Second Enterprise, along with the participation of the rest of the defendants (see *supra* ¶¶ 137–58, 164–73, 179–89, 218–24).

463. Upon information and belief, the First Enterprise and the Second Enterprise includes other individuals and entities whose identities are not currently known.

464. The major asset targeted by the defendants through the First Enterprise and Second Enterprise, the Funds from the sale of the SBP land in APD's bankruptcy proceedings in Bulgaria, was deemed an asset of Ayr in its bankruptcy proceedings in U.S. Bankruptcy Court in Texas and therefore its loss and the loss of plaintiffs' legal claim to those funds

through the U.S. bankruptcy proceedings were each a domestic injury suffered by plaintiffs in the United States.

465. Negotiations and notarization of documents related to the SBP scheme occurred in the U.S. including in New York and Texas, and New York bank HSBC Bank was employed by defendants to perpetrate their claim that money to fund the reconstruction and reorganization of APD to save the SBP from bankruptcy would be transferred from HSBC Bank, New York. This was never the case.

466. The above-listed racketeering activity consisted of two or more incidents of racketeering activity committed by the defendants. The predicate acts, including the scheme undertaken against the plaintiffs, were committed within ten (10) years of each other, had continuity, and were related pursuant to 18 U.S.C. § 1961(5).

467. These acts of racketeering constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and were interrelated by distinguishing characteristics, in that they had the same purpose, results, participants, victim, and methods of commission, and in part were directed at the same victim or victims: the plaintiffs.

468. This racketeering activity was a regular way of conducting the First Enterprise and the Second Enterprise and each member's participation in the Enterprise.

469. Upon information and belief, the Second Enterprise continues to this day, as CCB is subject to bankruptcy proceedings in Bulgaria as a result of the theft of the Funds and the defendants have attempted to conceal the scheme and thwart plaintiffs' efforts to investigate and uncover the full scope of the fraud, including, specifically, by threatening and instituting frivolous legal proceedings against Tomov to discourage and frighten him from pursuing these claims against the defendants.

*Relatedness and Continuity*

470. From at least 2007 and continuing through 2016, in the Southern District of New York and elsewhere, the defendants repeatedly engaged in acts indictable under 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1952 (relating to the Travel Act), and fraud in connection with a case under chapter 11, and thereby continually engaged in racketeering activity within the meaning of 18 U.S.C. § 1961(1).

471. Defendants' violations of 18 U.S.C. §§ 1341, 1343, 1952, and fraud in connection with a case under chapter 11 extended over a period of years and involved distinct and independent criminal acts. They were neither isolated nor sporadic events, but involved regular and repeated violation of law to accomplish the Enterprise's purpose. These acts were related to each other by virtue of (a) common participants: the First Group and the Second Group; (b) a common victim: the plaintiffs, either directly or indirectly through their dealings with the First Group related to the SBP; (c) common methods of commission: complicated financial, corporate, business, and shareholder transactions effectuated through offshore banks, shell companies, and transfer of funds among various banks to hide the theft of the Funds, all designed to obfuscate the transfer of wealth from the plaintiffs to the defendants; and (d) the common purpose of looting the Funds belonging to the plaintiffs regarding the SBP.

*Injury*

472. As a proximate, direct, and foreseeable result of the defendants' violations of RICO, 18 U.S.C. § 1962(a)-(c), plaintiffs were injured in their business or property by reason of these violations in that, as a direct, proximate, and foreseeable result of the First Enterprise and Second Enterprise's acts, plaintiffs suffered damages, including the loss of the benefit of their bargain, increased costs, expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships, and fear of economic loss as

well as actual economic loss. Specifically, plaintiffs suffered a loss of their investment of at least $65 million, the exact amount to be proven at trial.

473. In addition, the scheme left the finances of APD and Ayr in a state of complete crisis, resulting in the bankruptcy of both companies and subsequent negative reverse domino effect in their backlash on their shareholders, creditors, investors and plaintiffs.

## COUNT XXVII
## Civil Rico 18 U.S.C. 1962(d)
### (As to all defendants)

474. Plaintiffs adopt and incorporate herein by reference as if specifically set forth herein the averments of paragraphs 1 through 473 of the Complaint.

475. All defendants unlawfully, knowingly, and willfully conspired to commit activities prohibited by 18 U.S.C. § 1962(a)–(c) as described above, in violation of 18 U.S.C. § 1962(d).

476. The defendants knew that they were engaged in a conspiracy to commit the predicate acts described above and knew that the predicate acts were part of such racketeering activity, and that participation and agreement was necessary to allow the commission of this pattern of racketeering activity.

477. The defendants all knowingly agreed to conduct or participate directly or indirectly in the conduct, management, or operation of the First Enterprise and Second Enterprise's scheme to steal from the plaintiffs.

478. The defendants' violation of 18 U.S.C. § 1962(d) directly, proximately, and foreseeably caused the plaintiffs to suffer the injury described above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against the above-named Defendants as follows:

I. With respect to the First Cause of Action (Piercing the Corporate Veil and Alter Ego):

      i.      Judgment in favor of Plaintiffs and against Defendants, jointly and severally;

      ii.     Damages in an amount no less than $200,000,000, the exact amount of which to be determined at trial;

      iii.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

      iv.    Punitive damages in an amount to be determined at trial;

      v.     Declaratory judgment that Defendant Harris is the alter ego of Ayr; and

      vi.    Such other, further and different relief as this Court deems just and proper.

II.    With respect to the Second Cause of Action (Piercing the Corporate Veil and Alter Ego):

      i.      Judgment in favor of Plaintiffs and against Defendants, jointly and severally;

      ii.     Damages in an amount no less than $200,000,000, the exact amount of which to be determined at trial;

      iii.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

      iv.    Punitive damages in an amount to be determined at trial;

      v.     Declaratory judgment that Defendants Minev, Mutafchiev, Mellon Bank, Eaton Vance iare the alter egos of FIB; and

      vi.    Such other, further and different relief as this Court deems just and proper.

III.   With respect to the Third Cause of Action (Piercing the Corporate Veil and Alter Ego):

      i.      Judgment in favor of Plaintiffs and against Defendants, jointly and severally;

      ii.     Damages in an amount no less than $200,000,000, the exact amount of which to be determined at trial;

      iii.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

      iv.    Punitive damages in an amount to be determined at trial;

      v.     Declaratory judgment that Defendant Harriott is the alter ego of Grant Capital; and

      vi.    Such other, further and different relief as this Court deems just and proper.